UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                       Case No. 12-20372

vs.                                     HON. MARK A. GOLDSMITH

DESHON CATCHINGS,

               Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR COMPASSIONATE
## RELEASE (Dkt. 541)

Defendant Deshon Catchings pleaded guilty to conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846, as well as structuring a currency transaction at a financial institution for the purpose of evading reporting requirements, in violation of 31 U.S.C. § 5324(a)(3). Plea Agreement (Dkt. 105). On March 5, 2013, the Honorable John Corbett O'Meara sentenced Catchings to 151 months' imprisonment. Judgment (Dkt. 145).[1] Until recently, Catchings was incarcerated at the federal correctional institution in Sandstone, Minnesota (FCI Sandstone); in May 2021 he was transferred to FCI Safford in Arizona. While being transferred from FCI Sandstone to FCI Safford, Catchings was detained at the federal transfer center in Oklahoma City, Oklahoma (FTC Oklahoma). His projected release date is December 26, 2024.

On December 29, 2020, Catchings filed a request seeking appointment of counsel to assist him in connection with bringing a motion for compassionate release based on his fear of contracting

---

[1] This case was reassigned to the undersigned on December 28, 2018.

COVID-19 (Dkt. 523).  The Court granted this request (Dkt. 524) and issued an order appointing

counsel (Dkt. 525).  According to Catchings's immunization records, he received the first dose of the

Moderna vaccine on May 19, 2021, and the second on June 16, 2021.  Bureau of Prisons (BOP)

Immunization Records (Dkt. 545-2).

Subsequently, on July 6, 2021, Catchings filed the instant motion for compassionate release,

arguing that he is entitled to release due to his "susceptibility to Covid-19 and the practices at FCI

Sandstone, FTC Oklahoma, and FCI Safford." Mot. at 3 (Dkt. 541).[2]  Specifically, Catchings argues

that FCI Safford has not implemented proper safety protocols to address the risks posed by the

COVID-19 outbreak, and Catchings fears that he is particularly vulnerable to the virus because he

suffers from hypertension and obesity.  Id. at 18–19.[3]  The Government responds that Catchings's

fear of contracting the virus is non-compelling in light of the fact that he is now vaccinated.  Resp. at

8–9 (Dkt. 545).  In his reply, Catchings contends that his vaccination status should not preclude

granting him compassionate release.  Reply at 6–7 (Dkt. 547).

---

[2] Defense counsel did not know of Catchings's vaccination status when he filed the instant motion on Catchings's behalf.  See Mot. at 18.

[3] Although Catchings complains about the "practices" at FCI Sandstone and FTC Oklahoma, he does not further elaborate on the alleged insufficiency of the safety practices at those facilities as he does for FCI Safford.  This is of no consequence, however.  Because Catchings is currently incarcerated at FCI Safford, only the environment of that institution is relevant to the question of Catchings's potential exposure to COVID-19.

The Court agrees with the Government that Catchings's fear of contracting COVID-19 is a non-compelling reason for release in light of the fact that Catchings is now fully vaccinated.[4] Further, the § 3553(a) factors do not support release. Accordingly, the Court denies Catchings's motion.[5]

## I.    DISCUSSION

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[6] Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are

---

[4] Catchings requests that the Court grant his motion for compassionate release "and permit him to serve the remaining portion of his federal sentence on home confinement." Mot. at 28. To the extent that Catchings seeks home confinement under the Coronavirus Aid, Relief, and Economic Security Act, § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (2020), his motion is denied because the BOP has sole discretion to grant such relief. See United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020). However, the Court may consider Catchings's request for home confinement under 18 U.S.C. § 3582(c). Courts granting compassionate release pursuant to that statute may convert a defendant's remaining sentence term to a term of supervised release and impose an initial term of home detention. See, e.g., United States v. Amarrah, 458 F. Supp. 3d 611, 620–621 (E.D. Mich. 2020).

[5] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

[6] An incarcerated defendant must comply with the mandatory exhaustion requirements of § 3582(c) before filing a motion for compassionate release. Here, the Government concedes that Catchings has satisfied the exhaustion requirement. See Resp. at 7.

3

met, the district court "may reduce the term of imprisonment," but it need not do so.  18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13.  Jones, 980 F.3d at 1109.  It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."  Id.

## A. Extraordinary and Compelling Circumstances

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release.  United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020).  Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract the virus.  To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC).  See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021).

Catchings argues that he fears that his hypertension and obesity render him vulnerable to COVID-19.  While these conditions may increase unvaccinated individuals' risks of severe illness

from COVID-19,[7] the same is not true for vaccinated individuals.  According to the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more."[8]  Further, regarding people who are vaccinated but still get COVID-19, the vaccine has been shown to "provide protection against severe illness and hospitalization among people of all ages eligible to receive [it]."  Id.  Significantly, "[t]his includes people . . . who are at higher risk of severe outcomes from COVID-19."  Id.  Because Catchings received the second dose of the Moderna vaccine on June 16, 2021—over two weeks ago—he is now fully vaccinated, meaning that he is protected to the fullest extent by the vaccine.[9]  As a result, Catchings's fear of contracting the virus or suffering severe illness is not a compelling reason to release him.

Catchings argues in his reply that his vaccination status should not preclude granting his compassionate release.  To support his argument, Catchings relies on two opinions.  Neither, however, persuades the Court that Catchings's circumstances are extraordinary and compelling.

In the first opinion, United States v. Sweet, No. 07-20369, 2021 WL 1430836, at *2 (E.D. Mich. Apr. 15, 2021), appeal docketed, No. 21-1477 (6th Cir. May 11, 2021), another court within this district granted a vaccinated prisoner's motion for compassionate release, holding, "Although the Court agrees with the government that recovering from COVID-19 and being fully vaccinated decreases one's likelihood of severe COVID symptoms, recent data reveals that the threat of severe

---

[7] See CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html   [https://perma.cc/FKT4-6SD6] (recognizing both hypertension and obesity as conditions that "can" make an individual more likely to suffer severe illness from COVID-19).

[8]   CDC,   "COVID-19   Vaccines   Work,"   https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/WF6S-APG5].

[9] CDC, "COVID-19 Vaccines That Require 2 Shots," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html [https://perma.cc/744W-B5MX].

illness or death from COVID-19, while diminished, is nevertheless real." Several courts—in this district and elsewhere—have expressly declined to follow Sweet's logic. See, e.g., United States v. Cheatham, No. 2:17-cr-20053-1, 2021 WL 2659825, *2 (E.D. Mich. June 29, 2021) (rejecting Sweet's reasoning and noting that "the Moderna vaccine is exceptionally safe and effective, preventing 94.1% of infections in clinical trials") (punctuation modified); United States v. Smith, Nos. 2:98-cr-00009-KJM-CKD, 2:96-cr-00450-KJM, 2021 WL 1890770, at *5 (E.D. Cal. May 11, 2021).

In Smith, the court explained that it was "not persuaded" by Sweet for several reasons, including: (i) Sweet did not "cite or discuss conclusive data and research about vaccine effectiveness"; (ii) Sweet did not cite or discuss "the many decisions . . . in which dozens of other federal district courts have found that vaccination significantly reduces the risk of [infection or] reinfection"; and (iii) Sweet "leaned heavily on research about reinfection rather than vaccination, inferring essentially by analogy that this research was informative about the risks of vaccination," but "[i]t is unclear . . . that this analogy is sound" and, further, by drawing the inference, the court "relieved the defendant[] of [his] burden to offer 'extraordinary and compelling reasons.'" As Smith indicates, multiple district courts have found that once a prisoner is fully vaccinated, the prisoner cannot show extraordinary and compelling reasons for release by merely pointing to his fear of infection or severe illness. In fact, "[c]ourts in the Eastern District of Michigan routinely refuse to find that a fully vaccinated prisoner has an extraordinary and compelling reason for release because of their fear of contracting COVID-19." United States v. Collier, No. 2:15-cr-20774-1, 2021 WL 1560079, at *2 (E.D. Mich. Apr. 21, 2021) (collecting cases).

Like the Cheatham and Smith courts, this Court finds that in light of the high efficacy of the vaccine, vaccination renders a prisoner's fear of COVID-19 a non-compelling reason for

release.  This conclusion is consistent with decisions rendered by multiple other district judges.

Accordingly, this Court respectfully declines to follow <u>Sweet</u>.

In the second opinion relied on by Catchings, <u>United States v. Ball</u>, No. 06-cr-20465, 2021

WL 2351088, at *5 (E.D. Mich. June 9, 2021), another court within this district reduced a

vaccinated prisoner's sentence, holding that the prisoner's "vaccination status also does not work

against him."  <u>Ball</u> based this holding on its observation that "[t]he COVID-19 vaccine, though

largely successful at preventing severe illness, is by no means 100% effective and the longevity of

any immunity from . . . the vaccine . . . is uncertain."  <u>Id.</u>  <u>Ball</u> also noted that "[i]f anything, [the

prisoner's] choice to receive the vaccine shows that he is genuinely concerned for his health and

safety."  <u>Id.</u>

This Court does not doubt the genuineness of Catchings's fear for his health.  In fact, the

Court commends Catchings on his decision to get vaccinated—the most effective action to protect

himself and his community from the virus.  However, as discussed above, the vaccine's high

efficacy means that Catchings is very unlikely to get infected or suffer severe illness from COVID-

19.  And to the extent that there is uncertainty about exactly how long immunity from the vaccine

may last, Catchings—who just became fully vaccinated a few weeks ago—has likely not lost his

immunity already.  Speculation about the longevity of Catching's immunity is not a valid reason

to grant him release at this time.  Thus, the Court also respectfully declines to follow <u>Ball</u>'s logic.

Finally, the Court briefly addresses Catchings's argument that the environment at FCI

Safford may increase his vulnerability to the virus.  To the extent that Catchings argues that the

institution has not implemented sufficient safety protocols to protect inmates against the virus,

available data indicates otherwise.  Currently, of the 784 inmates at FCI Safford,[10] 503 (or approximately 64%) have been vaccinated.[11]  Further, there are currently no active cases of COVID-19 among staff or inmates at FCI Safford.[12]  Thus, if anything, the state of affairs at FCI Safford further compounds the non-compelling nature of Catchings's fear of infection.

Even if Catchings had shown the existence of extraordinary and compelling circumstances, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

### B.  Section 3553(a) Factors

The § 3553(a) factors weigh against granting Catchings release.  Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Regarding the nature and circumstances of Catchings's offenses, he was involved in transporting and selling cocaine.  These offenses are undoubtedly serious.  Cocaine is categorized as a Schedule II controlled substance due to its dangerousness, high potential for abuse, and ability to cause severe psychological or physical dependence among users.  The circulation of addictive drugs such as cocaine presents a grave danger to the community's health and wellbeing.

Catchings argues that his "difficult childhood"—being raised by his grandmother while his father was incarcerated and his mother struggled with drug addiction—warrants his release.  Mot. at 26.  Catchings's parents' lack of involvement in his upbringing, while unfortunate, was a fact

---

[10] BOP, "FCI Safford," https://www.bop.gov/locations/institutions/saf/ [https://perma.cc/2HQD-LVX2].

[11] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ [https://perma.cc/DE57-RKAH].

[12] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ [https://perma.cc/DE57-RKAH].

included in the presentence report and, therefore, was known to the judge who sentenced Catchings to 151 months' imprisonment.  Because the sentencing judge was aware of the circumstances of Catchings's childhood and took them into consideration at sentencing during his analysis of § 3553(a) factors, the Court sees no reason why Catchings's childhood should now favor a reduced sentence.

Catchings also argues that his post-arrest conduct—including his acceptance of his responsibility for his offenses (by pleading guilty) and the fact that he has been offered two employment opportunities upon his release—also favors granting him release.  Id. at 26–27.  Catchings's acceptance of responsibility, like the circumstances of his childhood, was known to the sentencing judge when he conducted the § 3553(a) analysis at Catchings's sentencing.  Therefore, Catchings's acceptance of responsibility, while laudable, does not weigh in favor of reducing his sentence below the one imposed by the sentencing judge.

In any event, the Court does not believe that Catchings's post-arrest behavior, on balance, weighs in favor of release.  Significantly, while incarcerated for the instant drug offenses, Catchings was convicted of another felony for possessing contraband (a controlled substance).  See United States v. Catchings, Case No. 19-082, Dkt. 17 (D. Minn.).  Catchings's commission of this offense suggests that he is not easily deterred and that he has not been fully rehabilitated.  It also indicates that there is a real risk that if released now, he would continue to commit crimes.   Thus, granting release would not protect the public from further crimes by Catchings.  Further, granting Catchings release would not promote respect for the law.

Accordingly, the § 3553(a) factors weigh against granting Catchings's motion.

## II.  CONCLUSION

For the reasons stated above, Catchings's motion for compassionate release (Dkt. 541) is

denied.

SO ORDERED.

Dated: August 5, 2021                                  s/Mark A. Goldsmith
        Detroit, Michigan                              MARK A. GOLDSMITH
                                                       United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any
unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail
addresses disclosed on the Notice of Electronic Filing on August 5, 2021.

                                                       s/Karri Sandusky
                                                       KARRI SANDUSKY
                                                       Case Manager